Taylor *vs.* The State of Georgia.

REUBEN TAYLOR, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Where an indictment charged the prisoner with simple larceny of a chestnut sorrel horse, of the value of $100 00, etc., and the Court overruled a motion for acquittal, etc. upon the ground that the indictment did not describe the property stolen :

*Held,* That this was not error; when the proof showed that the animal stolen was a horse, the allegation to that effect is sufficiently distinct and definite under the Code, as to the nature, character and sex of the animal, and the allegation that he was a chestnut sorrel horse, was such a mark of identity as came within the requirements of the statute.

2. An indictment against a negro need not describe him as a colored person. (R.)

3. *Held, again,* That upon a trial for larceny of a horse, a bill of sale to the horse offered by the prisoner, without showing *aliunde* its *bona fide* execution was inadmissible as evidence, and the Court committed no error in ruling out the testimony.

Criminal law. Pleading. Before Judge HARVEY. Floyd Superior Court. May Term, 1871.

Taylor, a negro, was indicted for horse-stealing. The only description in the indictment of the animal stolen was, " one chestnut-sorrel horse, of the value of $100 00, of the goods and chattels of Albert Berrien." The indictment did not mention Taylor's color. The taking was abundantly proven. The evidence described the animal only as the indictment did. Taylor then stated to counsel appointed to defend him that he had " a receipt for the horse," and produced what purported to be a bill of sale by one Sage conveying the horse to him. His counsel stated that he had just learned this, and making Taylor produce the paper, he offered it in evidence, though he could not prove its execution.

Taylor was convicted. His counsel moved in arrest of judgment, because said animal was not sufficiently described in the indictment, and because it did not mention Taylor's color. This motion was overruled. He then moved for a new trial, because the Court rejected said bill of sale. The new trial was refused.

D. ELAM, for plaintiff in error.

C. D. FORSYTH, Solicitor General, by J. W. H. UNDER-WOOD, for the State.

LOCHRANE, Chief Justice.

1. The legal question in this case turns on the construction of the provision of the Code, section 4328. That section declares " horse-stealing shall be denominated simple larceny, and the term horse shall include mule and ass, and each animal of both sexes, and without regard to the alterations which may be made by artificial means." Under this law, the plaintiff in error was indicted, and the charge in the indictment was in these words : " with the offense of simple larceny ; for that the said Reuben Taylor, in the county aforesaid, on the 2d day of March, 1871, one chestnut-sorrel horse, of the value of $100 00, of the goods and chattels of one Albert Berrien, then and there being," etc., etc. Did this indictment contain a sufficient description of the offense ? We think so. The term *horse* embraces generally all the classes and sexes, and if, in fact, a *mare* had been stolen the indictment would have been defective, for the term *horse,* by section 4229 of the Code, would be insufficient. " The indictment must designate the nature, character and sex of the animal, and give some other description by which its identity shall be ascertained." In this case, a *horse* was stolen, and the term itself expressed the nature, character and sex. No man could define a *horse* more accurately or intelligently than simply by the name. And the other description, chestnut-sorrel, was a mark of identity sufficient to comply with the requirements of the statute. And we, therefore, without going into questions made upon this subject, hold that the indictment was sufficient.

2. It is not necessary in an indictment to aver the *color* of the accused, except in cases, as of intermarriage in violation

Taylor *vs*. The State of Georgia.

of law, when the fact enters into the ingredients of the offense. The color of the accused neither aggravates nor ameliorates horse-stealing. The crime consists in the violation of the law, and the indictment, except for identity, need not contain any allegation of the color of the thief.

3. Again, we hold in this case, that the Court did not commit error in ruling out the bill of sale tendered in evidence, under the facts. When a prisoner is upon trial for larceny, and tenders, without proof of its execution, a paper purporting to be a bill of sale for the property stolen, such proof is clearly inadmissible. This would be permitting parties to manufacture evidence of their innocence. And besides this pretext has not infrequently been used to vindicate assumed innocence. The criminal laws have been administered with great liberality of construction, preferring rather for the guilty to escape than for the innocent to suffer. This has arisen out of a disturbed civil condition; but the clouds that were thick over us are dispersing, and the return to law and order daily becomes clearer and more imperative. And men of all colors must return to habits of industry and labor. Stealing to live, which has been a trade since the war, has to cease. Men must feel some security for their stock to raise them, and all the flimsy pretexts of innocence must give way before the demand for honesty and fair dealing, and strolling and vagabondising, stealing and plundering honest men must come to an end. The Courts will enforce the laws against idleness and strolling about without homes, preying upon plantations and smoke-houses, and force into labor or into public service the vagrants who plan and execute the petty thieving of the country. We think our brother below was right in ruling out the evidence, and, under the law and facts of this case, we affirm the judgment.